1
2
3
4
5
6
7
8           **IN THE UNITED STATES DISTRICT COURT**
9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11

| | |
|---|---|
| VALERIE RODELA, | CASE NO. CV F 11-2126 LJO BAM |
|        Plaintiff, | **ORDER TO DISMISS** |
|    vs. | (Doc. 4.) |
| GUILD MORTGAGE CO., | |
|        Defendant. | |
| _____/ | |

**BACKGROUND**

Defendant Guild Mortgage Company ("Guild") seeks to dismiss as legally barred pro se plaintiff Valerie Rodela ("Ms. Rodela's") claims arising from her loan default for and foreclosure of her Fresno property ("property"). This Court construes Ms. Rodela's action as an attempt to thwart, delay or complicate post-foreclosure property matters. For the reasons discussed below, this Court DISMISSES this action based on the absence of Ms. Rodela's credible claims and VACATES the February 6, 2012 hearing set by Guild.

**BACKGROUND**[1]

**Ms. Rodela's Loan And Property Foreclosure**

On March 19, 2010, Ms. Rodela obtained from Guild a $199,323 loan secured by a Deed of Trust

---

[1]    The factual recitation is derived generally from Ms. Rodela's Complaint ("complaint"), the subject of Guild's attacks, as well as matters of which this Court may take judicial notice.

1  ("DOT") on the property and which was recorded on March 30, 2010.[1]  Ms. Rodela was in default of

2  the loan as of May 2010.

3  On November 9, 2010, a Notice of Default and Election to Sell under Deed of Trust ("default

4  notice") was recorded against the property.  A copy of the default notice was sent by certified mail to

5  the property address on November 12, 2010.

6  In December 2010, Ms. Rodela requested Guild for a loan modification and "offered to pay the

7  past due mortgage as well as the monthly mortgage payment."  Guild denied Ms. Rodela loan

8  modification based on her unemployment.  Guild also denied Ms. Rodela's May 2011 loan modification

9  request.

10  On May 13, 2011, a Notice of Trustee's Sale ("sale notice") for the property was recorded.  On

11  May 11, 2011, the sale notice was sent to Ms. Rodela at the property's address and to another Fresno

12  address.

13  On June 7, 2011, Ms. Rodela filed a Chapter 7 bankruptcy action which was dismissed on June

14  27, 2011 after Ms. Rodela failed to file required documents.

15  On June 28, 2011, Ms. Rodela filed a Chapter 13 bankruptcy action which was dismissed on July

16  18, 2011 after Ms. Rodela failed to file required documents.

17  During this time period, Ms. Rodela submitted a third loan modification request which Guild

18  denied on July 13, 2011 based on Ms. Rodela's making only one loan payment, unemployment, and

19  bankruptcy filings.

20  The property sold at a July 20, 2011 trustee's sale.

21  **Ms. Rodela's Claims**

22  Prior to Guild's removal to this Court, Ms. Rodela filed her complaint on July 21, 2011 in Fresno

23  County Superior Court to allege common law and statutory claims focusing on Guild's purported failure

24  to provide required notices.  The complaint seeks damages and injunctive relief to prevent Guild from

25  taking property possession.

26  / / /

27

28  _____

[1]       Documents pertaining to Ms. Rodela's loan and default were recorded with the Fresno County Recorder.

**DISCUSSION**

**Sua Sponte Dismissal**

Guild characterizes the complaint as "a series of conclusory allegations concerning the origination and foreclosure of her property" with no "supporting facts that can withstand a motion to dismiss."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can

3

1   prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

2   alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

3   459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that

4   the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney,*

5   *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

6         A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

7   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

8   *Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

9   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

10  plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

11  *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either

12  direct or inferential allegations respecting all the material elements necessary to sustain recovery under

13  some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

14  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

15        In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

16  explained:

17        . . . a complaint must contain sufficient factual matter, accepted as true, to "state
    a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the

18  plaintiff pleads factual content that allows the court to draw the reasonable inference that
    the defendant is liable for the misconduct alleged. . . . The plausibility standard is not

19  akin to a "probability requirement," but it asks for more than a sheer possibility that a
    defendant has acted unlawfully.  (Citations omitted.)

20

21        After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

22  to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

23  must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

24  F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

25        The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

26        First, the tenet that a court must accept as true all of the allegations contained in
    a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of

27  a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
    only a complaint that states a plausible claim for relief survives a motion to dismiss. . .

28  . Determining whether a complaint states a plausible claim for relief will . . . be a

4

1   context-specific task that requires the reviewing court to draw on its judicial experience
2   and common sense. . . . But where the well-pleaded facts do not permit the court to infer
    more than the mere possibility of misconduct, the complaint has alleged – but it has not
3   "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

4           In keeping with these principles a court considering a motion to dismiss can
    choose to begin by identifying pleadings that, because they are no more than conclusions,
5   are not entitled to the assumption of truth. While legal conclusions can provide the
    framework of a complaint, they must be supported by factual allegations. When there are
6   well-pleaded factual allegations, a court should assume their veracity and then determine
    whether they plausibly give rise to an entitlement to relief.

7   *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

8       As discussed below, the complaint is subject to dismissal in the absence of claims supported by

9   a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.  In short, the

10  complaint's claims are legally barred.

11                              **Failure To Satisfy F.R.Civ.P. 8**

12      The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a

13  plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the

14  transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista*

15  *v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

16      F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct."  This requirement

17  "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."

18  *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  "Something labeled a complaint but written

19  more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to

20  whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."

21  *McHenry*, 84 F.3d at 1180.  "Prolix, confusing complaints . . . impose unfair burdens on litigants and

22  judges."  *McHenry*, 84 F.3d at 1179.

23      Moreover, a pleading may not simply allege a wrong has been committed and demand relief.

24  The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the

25  "grounds upon which it rests."  *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475,

26  1481 (9th Cir. 1997).  Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a

27  complaint must give fair notice and state the elements of the claim plainly and succinctly.  *Jones v.*

28  *Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  A plaintiff must allege with at least some

degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

The complaint fails to satisfy F.R.Civ.P. 8. The complaint offers only naked assertions lacking necessary factual enhancement. The complaint lacks cognizable facts of Guild's purported wrongdoing to provide fair notice as to what Guild is to defend. The complaint merely references missing "notices required by law." The complaint lacks cognizable claims or legal theories upon which to support Guild's liability. The complaint lacks specific, clearly defined allegations to give fair notice of claims plainly and succinctly to warrant dismissal of this action.

## Defective Notice Claims

The complaint's first six claims are entitled "Breach of Contract," "Gross Negligence," "Intentional Violation of the Duty of Good Faith," "Wrongful Foreclosure for Failing to Adhere to Power of Sale Notice Requirements," "Abuse of Process and Malicious Prosecution." The claims are predicated on insufficient notices: failure "to send any and all acceleration, default, and foreclosure notices," failure "to send any other foreclosure, acceleration, and default notices," "foreclosing on the property . . . in bad faith," failure "to submit that statutorily requisite notice," and failure "to follow the requirements in the Deed of Trust and the foreclosure law."

Guild notes that California foreclosure statutes require only notices of default and sale "at various times prior to foreclosure." *See I. E. Associates v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 702 P.2d 596, 600 (1985) ("The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes. . . . No case holding that a trustee of a deed of trust has any additional common law duties with respect to notice has been

1   cited or found.")

2                                                     ***Receipt Of Notices***

3        Guild argues that Ms. Rodela's receipt of notices is irrelevant in that California Civil Code

4   section 2924b only requires sending a default and sale notices by registered or certified mail.

5        California courts do not require actual receipt of default and sale notices:

6           We pointedly emphasize, however, that Civil Code sections 2924-2924h, inclusive, **do
           not require actual receipt by a trustor of a notice of default or notice of sale**. They

7           simply mandate certain procedural requirements reasonably calculated to inform those
           who may be affected by a foreclosure sale and who have requested notice in the statutory

8           manner that a default has occurred and a foreclosure sale is imminent.

9   *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 746-747, 111 Cal.Rptr. 112 (1973) (bold added); *see Knapp*

10  *v. Doherty,* 123 Cal.App.4th 76, 88-89, 20 Cal.Rptr.3d 1 (2004) ("The trustor need not receive actual

11  notice of the trustee's sale so long as notice is provided to the trustor that is in compliance with the

12  statute.")

13        Guild is correct that defective notice claims fail to the extent based on absence of receipt of the

14  default and sale notices.

15                                        ***DOT Requirements***

16        Guild further attacks the complaint's defective notice claims based on failure to satisfy DOT

17  notice requirements.

18        The DOT provides:

19           Any notice to Borrower provided for in this Security Instrument shall be given by
           delivering it or by mailing it by first class mail unless applicable law requires use of

20           another method.  The notice shall be directed to the Property Address or any other
           address Borrower designates by notice to Lender. . . . Any notice provided for in this

21           Security Instrument shall be deemed to have been given to Borrower or Lender when
           given as provided in this Paragraph.

22               . . .

23              Borrower requests that copies of the notices of default and sale be sent to the
           Borrower's address which is the Property Address.

24

25        The complaint lacks facts of failure to comply with DOT notice requirements in that the record

26  reflects that the default and sale notices were sent to the property address.

27                              ***Presumption Of Propriety***

28        Guild notes that the property foreclosure is presumed free of procedural defects.

1    Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

2    trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

3    in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust,

4    thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of

5    the loan."  *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A

6    deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid."  *Alliance*

7    *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

8    If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

9    may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

10   286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the

11   applicable California Civil Code sections:

12       The comprehensive statutory framework established to govern nonjudicial
         foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating
13       to notice and right to cure. It would be inconsistent with the comprehensive and
         exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another
14       unrelated cure provision into statutory nonjudicial foreclosure proceedings.

15   *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins.*

16   *Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of

17   the power of sale contained in a deed of trust.")

18   Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of

19   their authorized agents" may conduct the foreclosure process.  Under California Civil Code section

20   2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent

21   for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed

22   substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the

23   beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25

24   Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

25    "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights

26   of the borrower and lender."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777.  "As a general rule,

27   a trustee's sale is complete upon acceptance of the final bid."  *Nguyen v. Calhoun*, 105 Cal.App.4th 428,

28   440-441, 129 Cal.Rptr.2d 436 (2003).  "If the trustee's deed recites that all statutory notice requirements

and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted). "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'" *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)). "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940). A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970). As the California Supreme Court explained decades ago:

> It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Sham bidding and the restriction of competition are condemned, and inadequacy of price when coupled with other circumstances of fraud may also constitute ground for setting aside the sale.

*Bank of America Nat. Trust & Savings Ass'n v. Reidy*, 15 Cal.2d 243, 248, 101 P.2d 77 (1940).

The complaint lacks facts of a specific statutory irregularity or misconduct in the foreclosure proceedings. The complaint's apparent attempt to challenge foreclosure validity offers nothing to support a discrepancy in the foreclosure process to warrant dismissal of Ms. Rodela's claims. The complaint lacks allegations to overcome the presumption of foreclosure sale validity with its absence to articulate a procedural defect.

Moreover, California Civil Code section 2924b(e) provides that verified required mailing of default and sale notices "shall establish a conclusive presumption of mailing." Guild points to required affidavits for the notices of default and sale to create a conclusive presumption that "required notices

1  were properly sent."

2     Guild is correct that the required affidavits of mailing the default and sale notices establish a

3  conclusive presumption of mailing to further doom claims of improper notice.

4                                    ***Lack Of Prejudice***

5     Guild further challenges the defective notice claims' failure to allege Ms. Rodela's requisite

6  prejudice.

7     A "successful challenge to the sale requires evidence of a failure to comply with the procedural

8  requirements for the foreclosure sale that caused prejudice to the person attacking the sale." *6 Angels,*

9  *Inc. v. Stuart-Wright Mortgage, Inc.*, 85 Cal.App.4th 1279, 1284, 102 Cal.Rptr.2d 711 (2001) (citation

10 omitted); *see Knapp v. Doherty*, 123 Cal.App.4th 76, 94, 20 Cal.Rptr.3d 1 (2004) ("courts have rejected

11 claims of deficient notice where no prejudice was suffered as a result of the procedural irregularity").

12    Guild points to the complaint's allegation that in December 2010, Ms. Rodela offered Guild "to

13 pay the past due mortgage as well as the monthly payment." Guild notes that based on such allegation,

14 within a month of the default notice recording, Ms. Rodela knew "the amount required to cure the

15 default" to defeat a notion of prejudice.

16    Guild raises valid points as to the absence of alleged prejudice to further defeat the complaint's

17 defective notice claims.

18                                    ***Failure To Tender***

19    Guild attacks defective notice claims in the absence of the complaint's allegations of Ms.

20 Rodela's tender of amounts owed under her loan.

21    "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds*

22 *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

23 Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

24 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

25 *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the

26 creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount."

27 *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

28    A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997).  In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.  (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes.  *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  The basic rule is that an offer of performance is of no effect if the person making it is not able to perform.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495).  Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property."  *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

The complaint and record reveals Ms. Rodela's inability to tender.  The complaint alleges that Ms. Rodela became unemployed shortly after loan origination.  Ms. Rodela filed two bankruptcies and was denied loan modifications.  Inability to tender thwarts her defective notice claims.

### Truth In Lending Act

The complaint's eighth claim purports to allege a violation under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq. The TILA claim alleges that Guild extended credit to Ms. Rodela "without regard to the consumer's repayment ability," "concealed the guidelines in which they denied

1  loan modification," and "failed to disclose certain finance charges."

2  Guild challenges TILA claims as time barred.

3  ### *Damages Limitations Period*

4  A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a

5  TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA

6  requires that any claim based on an alleged failure to make material disclosures be brought within one

7  year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d

8  1176, 1183 (D. Or. 2005). The limitations period runs from the date of a transaction's consummation

9  which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v.*

10  *Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth

11  Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

12  
13  > The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

14  

15  The complaint points to March 19, 2010 loan origination to warrant the July 21, 2011 complaint

16  filing untimely for a TILA damages claim. A TILA damages claim is time barred.

17  ### *Rescission Limitations Period*

18  To the extent that the complaint pursues a TILA rescission claim, it too is time barred.

19  TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without

20  penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

21  *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a). TILA rescission may be

22  extended up to three years if the lender fails to comply with TILA disclosure requirements. *Semar*, 791

23  F.2d at 701-702; 15 U.S.C. § 1635(f).

24  15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

25  
26  > An obligor's right of rescission **shall** expire three years after the date of consummation of the transaction or **upon the sale of the property**, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

27  

28  The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit untimely

1  rescission:

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*, at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998); *Miguel v. Country Funding Corp.,* 309 F.3d 1161, 1164 (9th Cir. 2002) ("§ 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

Guild notes that Ms. Rodela's rescission right ended with the trustee's sale, pursuant to 15 U.S.C. § 1635(f)'s express terms.  Guild points to the absence of alleged facts to support setting aside the trustee's sale or of the availability of rescission.

Guild raises valid points. TILA rescission is time barred.

### *Equitable Tolling*

Defendants challenge application of equitable tolling to save TILA claims from expired limitations periods.

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  The Ninth Circuit Court has explained:

> Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing.  Instead it focuses on whether there was excusable delay by the plaintiff.  If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing until the plaintiff can gather what information he needs. . . . However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty.

*Santa Maria*, 202 F.3d at 1178 (citation omitted).

Courts are reluctant to invoke equitable tolling:

> A statute of limitations is subject to the doctrine of equitable tolling; therefore,

13

relief from strict construction of a statute of limitations is readily available in **extreme cases** and gives the court latitude in a case-by-case analysis. . . . The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire . . . Courts have been generally unforgiving, however, when a late filing is due to claimant's failure "to exercise due diligence in preserving his legal rights." . . .

*Scholar v. Pac. Bell*, 963 F.2d 264, 267-268 (9th Cir. 1992) (bold added; citations omitted).

To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)). "[T]o adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661.

The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action. *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566 (1998). The plaintiff must show that it was not at fault for failing to discover or had no actual or presumptive knowledge of facts sufficient to put it on inquiry. *Prudential Home*, 66 Cal.App.4th at 1247, 78 Cal.Rptr.2d 566. As to sufficiency of delayed discovery allegations, a plaintiff bears the burden to "show diligence" and "conclusory allegations" will not withstand dismissal. *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

The "mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations. This is sensible, because it is in line with the generally applicable principles of equitable tolling, and because a contrary rule would render the one-year statute of limitations meaningless, as it would be tolled whenever there were improper disclosures." *Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d 895, 906 (C.D. Cal. 2009). "Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil

14

1   Procedure." *Marzan v. Bank of America*, 779 F.Supp.2d 1140, 1149 (D. Haw. 2011) (citing *389 Orange*

2   *St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir.1999)).

3         Guild faults as inadequate the complaint's allegation that Ms. Rodela was "duly diligent in

4   ascertaining these violations." Guild challenges the complaint's allegation that "concealment prevented

5   Plaintiff from providing the necessary or missing information in order to remodify the loan."  Guild

6   points to the absence of facts "as to why the alleged concealment amounts to fraud, and by extension,

7   fraudulent concealment."

8         The complaint lacks necessary allegations for equitable tolling or fraudulent concealment.  The

9   complaint references vague TILA discrepancies and lacks allegations that Guild prevented Ms. Rodela

10   to compare documents she received to TILA disclosure requirements.  *See Hubbard v. Fidelity Federal*

11   *Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (no evidence suggested that lender concealed its alleged breach).

12   Nothing suggests that Ms. Rodela lacked information relevant to discovery of a TILA violation when

13   her loan was consummated.  The complaint offers nothing to demonstrate that despite the Ms. Rodela's

14   due diligence, she was unable to obtain information of a TILA violation.  The complaint is silent as to

15   her purported due diligence.  Moreover, the limitations period for TILA rescission is a statute of repose

16   not subject to equitable tolling.  TILA claims are time barred and subject to dismissal.

17                                **Real Estate Settlement Procedures Act**

18         The complaint's ninth claim alleges that Guild failed to provide a "Good Faith Estimate in the

19   time and manner" required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§

20   2601, et seq.

21                                        ***Limitations Period***

22         Guild attacks a RESPA claims as time barred and points to 12 U.S.C. § 2614's one-year

23   limitations period for violations of 12 U.S.C. § 2607.[2]  "The statute of limitations for private plaintiffs

24   suing under RESPA is one year from the 'date of the occurrence of the violation.'"  *Edwards v. First*

25   *American Corp.*, 517 F.Supp.2d 1199, 1204 (C.D. Cal. 2007) (quoting 12 U.S.C. § 2614). The "primary

26   ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high settlement charges' caused

27

28   _____
         [2]         12 U.S.C. § 2607(a) prohibits referral payments for real estate settlement services, and 12 U.S.C. § 2607(b) prohibits receipt of "any portion, split or percentage" of a settlement service fee, except for performed services.

by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services. This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing." *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).

Ms. Rodela closed her loan on March 19, 2010, well more than a year prior to the complaint's July 21, 2011 filing to bar RESPA claims in connection with loan origination.

### *Absence Of A RESPA Violation*

Guild further challenges the complaint's failure to allege a meritorious RESPA violation. Guild points to limited actionable RESPA wrongs of: (1) payment of kickback for real estate settlement services (12 U.S.C. § 2607(d)); (2) requiring a buyer to use a title insurer selected by the seller (12 U.S.C. § 2608(b)); and (3) loan servicer failure to give proper notice of transfer of servicing rights or to respond to a qualified written request for loan information (12 U.S.C. § 2605(f)).

Guild correctly points to the complaint's failure to allege facts to support an actionable RESPA violation.   12 U.S.C. § section 2604(c) provides that, "[e]ach lender shall include with the booklet a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement as prescribed by the Bureau."  Section 2604 does not provide a private civil remedy for a failure to provide a good faith estimate, unlike § 2605, which does provide that "whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure." *Delino v. Platinum Community Bank*, 628 F.Supp.2d 1226, 1232-1233 (S.D. Cal. 2009) (dismissing RESPA claim because "because there is no private cause of action for a failure to provide a good faith estimate under RESPA").

The complaint's RESPA claim fails as time barred and lacking facts to support an actionable violation.

### **Fraud Claims**

The complaint's tenth through thirteenth claims are entitled "Fraud, Fraudulent Concealment, Fraudulent Misrepresentation, Negligent Misrepresentation" and allege that Guild "misrepresented to Plaintiff into believing she would qualify for a loan modification" and that Guild "never intended to remodify the loan."  The complaint's (fourteenth) conspiracy to commit mortgage fraud claim alleges that Guild "conspired with unknown entities to carry out the acts" alleged in the tenth through thirteenth

1    fraud claims.

2        Guild attacks the fraud claims as lacking sufficient particularity to satisfy F.R.Civ.P. 9(b).

3                                        ***Fraud Elements***

4        The elements of a California fraud claim are: (1) misrepresentation (false representation,

5    concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

6    to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

7    631, 638, 49 Cal.Rptr.2d 377 (1996).   The same elements comprise a cause of action for negligent

8    misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

9    *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rptr.3d 1 (2004).

10       "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

11   specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

12   156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce

13   the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

14   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

15   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements

16   will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

17   Cal.Rptr. 355 (1986).

18                                  ***Particularity Pleading Standard***

19       F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3]

20   In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s

21   particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.

22   Cal. 2003).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P.

23   / / /

24   / / /

25

26       [3]       F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court

27   will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the
     Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess*

28   *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.
     1995)(italics in original)).

9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[4]  A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)).  The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .  The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

---

[4]     "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

1    1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the

2    misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times,

3    dates, places, benefits received and other details of the alleged fraudulent activity.")

4    In a fraud action against a corporation, a plaintiff must "allege the names of the persons who

5    made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they

6    said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2

7    Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

8    F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but

9    'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform

10   each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz*

11   *v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*,

12   995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants,

13   a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent

14   scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). "To state a claim

15   of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every

16   defendant with enough information to enable them 'to know what misrepresentations are attributable

17   to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers*

18   *of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*,

19   694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

20   Guild faults as lacking sufficient particularity the complaint's allegations regarding loan

21   modification.  Guild points to the absence of identify as to who make statements, when they were made,

22   and the means by which they were made.  Guild notes the lack of actionable harm from failed loan

23   modification in that there is no right to loan modification.  *See Mabry v. Superior Court,* 185

24   Cal.App.4th 208, 110 Cal.Rptr.3d 201, 231 (2010).  Guild further notes that Ms. Rodela "cannot be

25   damaged by paying what she admits she owes" in that she overlooks "the elementary proposition that

26   a borrower is legally obligated to repay his or her loans." *AB Group v. Wertin*, 59 Cal.App.4th 1022,

27   1028, 69 Cal.Rptr.2d 652 (1994).  "Generally speaking, a commitment to perform a preexisting

28   contractual obligation has no value. In contractual parlance, for example, doing or promising to do

19

1   something one is already legally bound to do cannot constitute the consideration needed to support a

2   binding contract. . . . The same understanding has carried over to the tort area." *Auerbach v. Great*

3   *Western Bank*, 74 Cal.App.4th 1172, 1185, 88 Cal.Rptr.2d 718 (1999).

4           The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard.  The complaint

5   lacks precise allegations as to what Guild, through specifically identified and authorized agents or

6   representatives, allegedly promised or represented. The complaint lacks facts to support fraud elements

7   let alone the who, what, when, when and how of alleged misconduct to satisfy the heightened F.R.Civ.P.

8   9(b) pleading standard.  The complaint relies on the mere failure of loan modification, to which Ms.

9   Rodela was neither entitled nor qualified, and thus lacks facts to support her purported damages.

10          Moreover, fraud claims addressing alleged failure to modify Ms. Rodela's loan sound in breach

11   of contract rather than fraud.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir. 1993)

12   (failure to carry out a promise "does not constitute fraud unless, when the promise was made, the

13   defendant secretly intended not to perform or knew that he could not perform").

14          In sum, the fraud claims fail.

15                              **RICO[5] And Mail And Wire Fraud**

16          The complaint's fifteenth through seventeenth claims are entitled "Civil RICO, Civil Conspiracy

17   to Commit Mail Fraud, and Civil Conspiracy to Commit Wire Fraud."  The claims allege that Guild

18   "engaged in a mortgage lending enterprise to undertake the conduct" described in the fraud claims.

19          Guild faults the RICO, mail fraud and wire fraud claims as "nonsensical" and lacking necessary

20   particularity.

21          The Ninth Circuit applies F.R.Civ.P. 9(b) particularity requirements to RICO claims under 18

22   U.S.C. § 1962.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman*

23   *Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93  (9th Cir. 1988) ("The allegations of predicate acts in

24   the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or

25   nature of the alleged communications are pleaded. This is a fatal defect under Fed.R.Civ.P. 9(b), which

26   requires that circumstances constituting fraud be stated with particularity."); *Schreiber Distrib. Co. v.*

27

28          [5]     This Court presumes that the complaint's reference to RICO is to the Racketeer and Corrupt Practices Act
    ("RICO"), 18 U.S.C. §§ 1961, et seq.

1    *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986) ("We have interpreted Rule 9(b) to mean

2    that the pleader must state the time, place, and specific content of the false representations as well as the

3    identities of the parties to the misrepresentation.")

4        "The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect

5    on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous

6    RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st

7    Cir. 1990).

8        "The particularity requirements of Rule 9(b) apply to allegations of mail fraud, 18 U.S.C. §

9    1341, and wire fraud, 18 U.S.C. § 1343, when used as predicate acts for a RICO claim." *Murr*

10   *Plumbing, Inc. v. Scherer Bros. Financial Services Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

11       Similar to the fraud claims, the RICO and mail and wire fraud claims fail to satisfy F.R.Civ.P.

12   9(b) particularity requirements to warrant their dismissal.  The this Court construes the claims' mere

13   reference to the unsupported fraud claims as a concession that Ms. Rodela lacks supporting facts for such

14   significantly serious claims.

## Attempt At Amendment And Malice

16       As discussed above, the complaint's global claims are barred legally, and Ms. Rodela is unable

17   to cure the complaint's claims by allegation of other facts and thus is not granted an attempt to amend.

18   Moreover, this Court surmises that Ms. Rodela brought this action in absence of good faith and that Ms.

19   Rodela seeks to exploit the court system to delay or to vex Guild.  The test for maliciousness is a

20   subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v.*

21   *Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th

22   Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss

23   case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can

24   be inferred from a complaint containing untrue material allegations of fact or false statements made with

25   intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).  An attempt to vex

26   or delay provides further grounds to dismiss this action.

## CONCLUSION AND ORDER

28       For the reasons discussed above, this Court:

1    1.    DISMISSES with prejudice this action against Guild; and

2    2.    DIRECTS the clerk to enter judgment in favor of defendant Guild Mortgage Company

3         and against plaintiff Valerie Rodela and to close this action.

4    IT IS SO ORDERED.

5    **Dated:    January 18, 2012**              /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE

22